## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

Amber Baltimore, Taylor Ledbetter,
and Cody Ainsworth, as surviving
children and next of kin of Ronnie Glenn
Ledbetter,

      Plaintiff,

vs.

Grundy County, TN;

Heath Gunter, Justin Graham, Jayven Bess,
Kenneth Nunley, Brandon King, and David
Young,
in their individual capacities as officers of the
Grundy County Sheriff's Department;

Joshua Turner in his individual capacity as a
correctional officer for the Grundy County
Jail;

      Defendants.

Case No. _____


*Jury Trial Demanded*

---

## COMPLAINT FOR DAMAGES WITH JURY DEMAND

---

COMES NOW the Plaintiffs, Amber Baltimore, Taylor Ledbetter, and Cody

Ainsworth, who are the surviving children and next kin of Ronnie Ledbetter, and for

cause of actions against the Defendants, respectfully states as follows:

1

## I. PRELIMINARY STATEMENT

1.      This is a civil rights action brought under the Fourth and Fourteenth Amendments to the Constitutions of the United States and Title 42 of the United States Code, Sections 1983 and 1988. Plaintiffs bring this action to obtain compensatory damages, punitive damages, attorney's fees, costs, and other equitable relief for Mr. Ledbetter's false and unlawful arrest on May 29, 2024, and his subsequent unlawful detention and sustained injuries.

2.      The police officers who beat and arrested Mr. Ledbetter acted under color of law when they violated his constitutional right to be free from the use of excessive force, thereby causing his brutal death. Furthermore, these law enforcement officers acted in accordance with unconstitutional policies, customs, usages, and/or practices that had been promulgated by the policymakers in their respective jurisdictions.

3.      Mr. Ledbetter leaves behind an estate with beneficiaries, including his three (3) children. Therefore, as Mr. Ledbetter's surviving children, Plaintiffs Amber Baltimore, Taylor Ledbetter, and Cody Ainsworth seek money damages against these law enforcement officers pursuant to 42 U.S.C. § 1983 to redress the deprivation of Mr. Ledbetter's established rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution.    Moreover, Plaintiffs seek money damages against Grundy County, Tennessee pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 *(1978)* and its progeny because the unconstitutional policies, customs, usages, and practices of this County were the moving forces behind the actions of their respective

2

police officers. Plaintiffs also seek their attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## II. Jurisdiction and Venue

4. This action is brought against the Defendants pursuant to 42 U.S.C. § 1983, which authorizes actions to redress deprivation, under color of state law, of rights, privileges, and immunities secured to Mr. Ledbetter by the Constitution of the United States.

5. Jurisdiction is founded upon 28 U.S.C. § 1331 and § 1343, as well the Fourth and Fourteenth Amendments to the Constitution of the United States.

6. This Court has supplemental jurisdiction to adjudicate state law claims, if any, which arise from the same facts and circumstances, pursuant to 28 U.S.C. § 1376(a).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the factual acts and omissions which gave rise to this cause of action occurred within this district and within one (1) year of the filing of this Complaint and this Court otherwise has jurisdiction.

8. All parties are subject to the jurisdiction of this Court.

## The Parties

9. At all times relevant hereto and until the time of his death on May 29, 2024, the decedent, Ronnie Ledbetter was a citizen of the United States and of the State of Tennessee.

10. The Plaintiffs, Amber Baltimore, Taylor Ledbetter, and Cody Ainsworth are the children and next of kin of Ronnie Ledbetter. Pursuant to Tennessee's wrongful death

3

statutes, Plaintiffs have a duty to protect the interests of their late father's estate. Amber Baltimore is an adult resident citizen of the County of Bedford, State of Tennessee. Taylor Ledbetter is an adult resident citizen of the County of Bedford, State of Tennessee. Cody Ainsworth is an adult resident citizen of the County of Hamilton, State of Tennessee.

11. Defendant Grundy County, Tennessee is a political subdivision of the State of Tennessee. At all material times, Defendant was responsible for the training and supervision of Defendants Heath Gunter, Justin Graham, Jayven Bess, Kenneth Nunley, Brandon King, David Young and Joshua Turner. At all material times, the County of Grundy, Tennessee delegated to Sheriff Heath Gunter the responsibility to establish and implement policies, practices, procedures and customs used by the Grundy County Sheriff's Department regarding the use of force and the escalation of encounters with individuals experiencing distress. At all material times, Defendant Grundy County, Tennessee acted under color of law.

12. Defendant Heath Gunter, at all relevant times, he was the duly elected Sheriff of Grundy County, Tennessee and acting under color of state law by virtue of his authority as Sheriff for the Grundy County Sheriff's Department. Defendant Gunter is responsible for hiring, training, and supervision of all law enforcement officers employed by Grundy County Sheriff's Department. He created and authorized implementation of relevant policy and procedures which oversaw and directed all law enforcement officers employed by Grundy County Sheriff's Department. He is sued in his individual capacity and under a theory of respondeat superior.

4

13.     Defendant Justin Graham was employed by Grundy County, Tennessee and the Grundy County Sheriff's Department.  At all material times, Defendant Graham acted under color of state law by virtue of his authority as a law enforcement officer for the Grundy County Sheriff's Department.  He is sued in his individual capacity.

14.     Defendant Jayven Bess was employed by Grundy County, Tennessee and the Grundy County Sheriff's Department.  At all material times, Defendant Bess acted under color of state law by virtue of his authority as a law enforcement officer for the Grundy County Sheriff's Department.  He is sued in his individual capacity.

15.     Defendant Kenneth Nunley was employed by Grundy County, Tennessee and the Grundy County Sheriff's Department.  At all material times, Defendant Nunley acted under color of state law by virtue of his authority as a law enforcement officer for the Grundy County Sheriff's Department.  He is sued in his individual capacity.

16.     Defendant Sergeant Brandon King, formerly chief deputy, was employed by Grundy County, Tennessee and the Grundy County Sheriff's Department.  At all material times, Defendant King acted under color of state law by virtue of his authority as a law enforcement officer for the Grundy County Sheriff's Department.  He is sued in his individual capacity.

17.     Defendant David Young was employed by Grundy County, Tennessee and the Grundy County Sheriff's Department.  At all material times, Defendant Young acted under color of state law by virtue of his authority as a law enforcement officer for the Grundy County Sheriff's Department.  He is sued in his individual capacity.

5

18.     Defendant Joshua Turner was employed by Grundy County, Tennessee and the Grundy County Jail. At all material times, Defendant Turner acted under color of state law by virtue of his authority as a correctional office for the Grundy County Jail. He is sued in his individual capacity.

19.     Defendants **JOHN DOES 1-25** are those persons, firms, corporations or other entities who are in any way responsible to the Plaintiffs for the damages sustained herein and whose identities or precise tortious acts and omissions are at this time unknown or undiscovered.  These Defendants will be added by amendment when ascertained, including, but not limited to, those unknown staff members who assisted with the treatment provided to the Plaintiff.

### III.  Factual Allegations

20.     On May 29, 2024, fifty-three (53) year-old Ronnie Ledbetter had driven off of Sherrill Road in Coffee County, Tennessee and struck a pole.

21.     At approximately 5:19 a.m. on the morning of May 29, 2024, Brian Gilliam of the Pelham Fire Department noticed Mr. Ledbetter's vehicle on the side of the road. Mr. Gilliam could see that Mr. Ledbetter was unconscious and called 911.

22.     First to arrive on the scene were members of the Pelham Fire Department and EMS.

23.     Mr. Gilliam then busted the window out of the back passenger door out of Mr. Ledbetter's vehicle. When Mr. Ledbetter came to, he was disoriented and confused by the situation. Greg Shadwick with EMS leaned into Mr. Ledbetter's vehicle for the purpose of placing a cervical collar on Mr. Ledbetter when Mr. Shadwick was

6

inadvertently poked in the eye under his glasses. Fellow EMS worker Anne King observed that Mr. Ledbetter had no obvious injuries or visible signs of trauma at this time.

24. At this point Mr. Ledbetter had been involved in a motor vehicle accident, had been startled awake by the loud and violent breaking of the glass window of his vehicle, had multiple strangers yelling at him and placing their hands in close proximity to his head and neck, and was disoriented by the trauma of his surroundings.

25. Shortly after Mr. Shadwick was inadvertently poked in the eye dispatch incorrectly relayed to responding Sherriff's Department personal that an EMS worker was punched in the face and that Mr. Ledbetter was extremely combative.

26. Defendant Graham and Defendant Bess were the first deputies from the Grundy County Sheriff's Department on scene and presumably heard the incorrect statement from dispatch.

27. According to witness statements Defendants Graham and Bess immediately upon arrival approached Mr. Ledbetter and without any communication or instructions (i.e. a lawful command to exit the vehicle) to Mr. Ledbetter, started striking him about the head and torso.

28. This violent, unprovoked, and unnecessary attack resulted in Mr. Ledbetter's face beginning to bleed. Mr. Ledbetter was then handcuffed and thrown to the ground. Officers Graham and Bess then inflicted gratuitous and unnecessary strikes to Mr. Ledbetter while he was incapacitated.

7

29.     Defendant Graham's and Bess's actions were so extreme and uncalled for, that onlookers at the scene began protesting the treatment of Mr. Ledbetter and started video tapping their actions. Defendant Graham observed Defendant Bess's actions and had a duty to intervene and stop the assault likewise Defendant Bess observed Defendant Graham's actions and had a duty to intervene and stop the assault. Both of these Defendants observed later Defendants continuing the assault and failed to protect Mr. Ledbetter from the assaults of Defendants Nunley, King, Young, and Turner.

30.     After Mr. Ledbetter was placed in handcuffs, he was led by Defendant Graham and Defendant Bess to their patrol car. Defendant Graham and Defendant Bess did not have a cage in their patrol car and had to request an officer with a cage come to transport Mr. Ledbetter to the Grundy County Jail.

31.     While waiting for the police car to arrive Mr. Ledbetter's legs gave out and he fell over. Defendant Graham and Defendant Bess continued to yank Mr. Ledbetter up as he struggled to stand from the attack he had sustained from Defendants Graham and Bess. At this point it is obvious that Mr. Ledbetter was:

     i.     Incapacitated with his hand cuffed behind his back,

     ii.    In medical distress requiring emergency medical assistance as evidenced by his profusely bleeding face and his inability to stand and altered mental status,

     iii.   The recipient of unjustifiable, violent, and excessive force at the hands of law enforcement officers, and

     iv.    Erroneously arrested and detained by his abusers.

8

All of these four (4) obvious conditions were the result of the unconstitutional actions of Officers Graham and Bess.

32.     The Grundy County Sheriff's Department Policy and Procedures state when a person is combative enough to require leg restraint as well as being handcuffed they are to be placed in patrol car in a position that will not obstruct their breathing, such as on their side or sitting up. However, shortly after Defendant Nunley arrived on scene and found Mr. Ledbetter on his stomach, handcuffed with Defendant Graham and Defendant Bess holding him down in a position that would deprive oxygen.

33.     Defendant Nunley, Defendant Graham, and Defendant Bess then forcibly and violently placed Mr. Ledbetter in Defendant Nunley's patrol vehicle while Mr. Ledbetter was in severe medical distress and incapacitated.

34.     Defendant Young arrived on scene shortly followed by Defendant King. Mr. Ledbetter was moved to Defendant King's vehicle by Defendant Graham, Defendant Bess, Defendant Young, and Defendant King.

35.     Defendants Nunley, Young, and King each witnessed and continued the assault against Mr. Ledbetter.

36.     During the transfer to Defendant King's vehicle Mr. Ledbetter was tasered approximately three (3) to four (4) times by Defendant King. The transfer to Defendants King's vehicle was a continuation of the assault perpetrated by Defendants King, Graham, Bess, Nunley, and Young.

37.     At approximately 6:04 a.m. Mr. Ledbetter was taken from the scene and transported to the Grundy County Jail by Defendant King followed by Defendant Young.

9

Transport took approximately 30 minutes at which time Mr. Ledbetter's medical status continued to deteriorate. Contrary to the Policy and Procedure Manual regarding suspect transport, Defendant King continued to the Grundy County Jail instead of bringing Mr. Ledbetter to the Emergency Room for treatment.

38.     Defendant King knew or should have known that at the time he was transporting Mr. Ledbetter that he was in a severe medical crisis and Defendant King's refusal to detour to the nearest medical facility constitutes a willful and deliberate indifference to the health and welfare of Mr. Ledbetter.

39.     The Grundy County Jail had been placed on notice that Defendant King and Defendant Young were on their way with Mr. Ledbetter. Correctional Officers, Defendant Turner and Malkelm Leffler, were advised to wait outside and help Defendant King and Defendant Young get Mr. Ledbetter into the jail.

40.     According to statements from Nurse John Anderson and Mr. Leffler, Mr. Ledbetter was combative and kicking as Defendant Turner, Defendant King, and Defendant Young brought Mr. Ledbetter from the patrol car, through the jail, and to the "M2" cell. However, the security footage from the Grundy County Jail shows three (3) officers dragging a lifeless body through the jail. This was a continuation of the initial assault against Mr. Ledbetter by Defendants King, Young, and Turner.

41.     Mr. Ledbetter was drug into the unlight "M2" cell and dropped onto the floor. Shortly thereafter jail medical staff began CPR and called for an ambulance.

42.     Mr. Ledbetter's body was then transported by ambulance to the nearest hospital where he was pronounced dead.

10

43.     Though the Grundy County Sheriff's Department's Policy and Procedures states that "deputies shall activate the [body worn camera] to record all contacts with citizens in the performance of official duties" not a single Grundy County officer activated a body camera when dealing with Mr. Ledbetter.

44.     The actions of the individual Defendants as stated above caused extreme, almost unfathomable, pain and suffering to Ronnie Ledbetter prior to his death. Mr. Ledbetter sustained multiple beatings, was held down in a position where he could not adequately breath, was tased multiple times, and was denied lifesaving medical care. Mr. Ledbetter's body was riddled with dozens of lacerations and severe contusion as well as twelve (12) broken ribs.

45.     The initial 911 call by Brian Gilliam, initiated with the intent to ensure Mr. Ledbetter's safety and well-being, tragically became the catalyst for his demise.

46.     All acts of the individual Defendants involved in this incident were performed under the color and pretense of the constitutions, statutes, ordinances, regulations, customs and usages of the United States of America and the State of Tennessee, under the color of law and by virtue of their authority as law enforcement officers, and in the course and scope of their employment as law enforcement officers.

47.     The acts of violence against Mr. Ledbetter, administration of excessive force, and the disregard for the safety and wellbeing of Mr. Ledbetter were carried out as a routine practice of the Grundy County Sheriff's Department, and consistent with the training and supervision by Defendant Sheriff Heath Gunter and amount to violations of Mr. Ledbetter's constitutionally protected right to be free from excessive force.

11

## COUNT I - EXCESSIVE FORCE

48.     Plaintiff re-alleges and incorporates all paragraphs in this Complaint as if fully stated herein.

49.     Defendants Graham, Bess, King, Nunley, Young, and Turner's acts of beating, restraining, tasering, and/or dragging were an objectively unreasonable, unnecessary, and excessive use of force that constituted punishment and was not rationally related to a legitimate nonpunitive governmental purpose or was excessive in relation to such purpose.

50.     Defendants Graham, Bess, King, Nunley, Young, and Turner acted under color of law to deprive Mr. Ledbetter of his right to be free of excessive force, and this amounts to punishment pursuant to the Fourteenth Amendment to the Constitution of the United States and by 42 U.S.C. § 1983.

51.     Mr. Ledbetter's right to be free from excessive force in the manner described in this Complaint was clearly established at the time the force was used and the Defendants knew or should have known that the excessive force articulated in this Complaint was a violation of Mr. Ledbetter's constitutionally protected rights.

52.     As a direct and proximate result of the acts of Defendants Graham, Bess, King, Nunley, Young, and Turner, Mr. Ledbetter suffered severe mental and physical pain and suffering and injury prior to his death.

53.     Defendants Graham, Bess, King, Nunley, Young, and Turner are jointly and severally liable for the excessive force used on Ronnie Ledbetter because they acted

12

jointly and in conspiracy with one another to cause the harms described herein, which constituted excessive force.

54. The acts and omissions of Defendants Graham, Bess, King, Nunley, Young, and Turner complained of herein were unlawful, conscious shocking and unconstitutional and performed maliciously, recklessly, fraudulently, intentionally, willfully, wantonly and in such a manner as to entitle the Plaintiff to an award of punitive damages.

55. Defendant Heath Gunter as the Sheriff of the Grundy County Sheriff's Department directly oversaw hiring, retention, training, and supervision of every named defendant contained within this complaint and is therefore responsible for their conduct as well as his failure to prevent damages inflicted upon Mr. Ledbetter from occurring.

56. Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees under 42 U.S.C. § 1988.

## COUNT II - FAILURE TO PROTECT

57. Plaintiff re-alleges and incorporate all paragraphs in this Complaint as if expressly stated herein.

58. Defendants Gunter, Graham, Bess, King, Nunley, Young, and Turner observed or had reason to know that excessive force would be (or was being) used by the other individual Defendants, and as such, they had both the opportunity and the means to prevent the harm from occurring and from continuing to occur.

59. There was sufficient time during the incident described to stop other individual Defendants from the continued use of excessive force. Nevertheless, not only

13

did each individual Defendant fail to take any action to stop the excessive force, but each individual Defendant also actively participated in the excessive force.

60.    The individual Defendants are liable for failing to protect Mr. Ledbetter from each other's excessive and unnecessary force because they each owed Mr. Ledbetter a duty of protection against such use of excessive force. Specifically, each officer was directed by the Grundy County Policy and Procedure Manual that, "The care, custody, control, and safety of a suspect is the sole responsibility of the arresting officer… Arresting officers are required to protect suspects from other suspects, victims, fellow officers, and self-inflicted injuries."

61.    The failure to protect Mr. Ledbetter from excessive force was a violation of his Fourteenth Amendment rights and was clearly established at such time through then existing case law and the Sheriff's Department's own Policy and Procedure Manual.

62.    As a direct and proximate result of the individual Defendants' failure to protect Mr. Ledbetter from excessive force and their deliberate indifference in providing immediate medical attention, Mr. Ledbetter suffered severe harm including pain and suffering and ultimately death.

63.    Defendant Gunter failed to protect Mr. Ledbetter by creating a policy, practice, and custom of employing untrained and inadequately supervised deputies as well as failing to address a history of constitutional violations by his officers.

64.    The actions and omissions of the individual Defendants complained of herein were unlawful, conscience-shocking, and unconstitutional. Moreover, they were

14

performed maliciously, recklessly, intentionally, willfully, wantonly, and in such a manner as to entitle the Plaintiff to an award of punitive damages.

65.     Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees under 42 U.S.C. § 1988.

## COUNT III - 42 U.S.C.§ 1983 - *Monell Liability*

66.     Plaintiff hereby incorporates and re-alleges all preceding paragraphs in this Complaint as if expressly stated herein.

67.      The unconstitutional policies, practices, and customs of Sheriff Heath Gunter and Grundy County were the direct and proximate cause of Mr. Ledbetter's death. These policies, which Grundy County knowingly tolerated, included the deployment of untrained, uncertified, and inadequately supervised deputies, as well as a failure to address repeated constitutional violations despite notice to municipal policymakers.

68.     There have been repeated complaints of constitutional violations known to the municipal policymakers which they have failed to correct and could have corrected with appropriate training.

69.     To support these allegations, Plaintiffs rely on the following facts:

70.     On September 22, 2022, Alexander Stock was detained for forty-five (45) minutes and frisked by a Grundy County Sheriff's Deputy for a minor speeding violation. The deputy justified these actions as "protocol," demonstrating a pattern of unconstitutional practices within the Sheriff's Department.

15

71.     On August 1, 2023, Mary Wockasen was arrested by a Grundy County Sheriff's Deputy who lacked a high school diploma or General Educational Development (GED) certificate, a mandatory requirement for police officer certification in Tennessee. This incident exemplifies Grundy County's practice of hiring unqualified personnel.

72.     The Grundy County Sheriff's Department and Sheriff Gunter have faced repeated investigations by the Tennessee Peace Officer Standards & Training (P.O.S.T.) Commission for employing unlicensed, untrained, or uncertified deputies. Hearings were held on July 21, 2023; August 18, 2023; October 20, 2023; September 19, 2024; October 17, 2024; and January 16, 2025. At the August 18, 2023, hearing, Sheriff Gunter admitted to deploying uncertified and untrained officers on patrols, citing a staffing shortage after twenty-three (23) employees resigned upon his assumption of office.

73.     Since Sheriff Gunter took office, at least six (6) Grundy County Sheriff's Department officers have been placed on the Brady/Giglio List maintained by the District Attorney General for Tennessee's 12th Judicial District, indicating credibility issues. Most of these officers remain employed by Grundy County with minimal or no disciplinary action, reflecting a custom of tolerating misconduct.

74.     The hiring of Defendant Jayven Bess, a nineteen (19)-year-old deputy with inadequate training and supervision, further illustrates Grundy County's deficient policies. These shortcomings directly contributed to the events leading to this lawsuit.

75.     Upon information and belief none of the individual Defendants were terminated, suspended, disciplined, or retrained. The absence of any corrective action

after Mr. Ledbetter's death indicates approval of the conduct of the individual Defendants by Sheriff Gunter, Grundy County, and other municipal policymakers.

76.     As a direct and proximate result of the acts and omissions described herein, Mr. Ledbetter and Mr. Ledbetter's estate, namely his children, have suffered compensatory and special damages as defined under federal common law and in an amount to be determined by a jury.

77.     As a direct and proximate result of these wrongful acts and omissions, the Plaintiffs have suffered a pecuniary loss, including medical and funeral expenses, and other compensatory damages to be determined by the jury.

78.     The actions and omissions of the individual Defendants complained of herein were unlawful, conscience-shocking, and unconstitutional.  Moreover, they were performed maliciously, recklessly, intentionally, willfully, wantonly, and in such a manner as to entitle the Plaintiff to an award of punitive damages.

79.     Plaintiffs are entitled to recover their costs, including reasonable attorneys' fees under 42 U.S.C. § 1988.

## COUNT IV - 42 U.S.C. § 1983 - *Canton Liability*

80.     Plaintiff hereby re-alleges and incorporates all paragraphs in the Complaint as if expressly stated herein.

81.     Defendant Grundy County failed to properly train or modify its training for Defendant officers and for its other officers, including but not limited to, (1) matters related to the reasonable and appropriate use of force during such encounters, (2) intervention in the excessive force by fellow officers including their duty to protect, (3)

17

the identification of medical emergencies in suspects, and (4) the appropriate care to be provided to suspects including the requirement to transport suspects to a medical facility.

82.　Using force to effectuate an arrest, intervening in the use of force by fellow officers, identifying medical emergencies in suspects, and the appropriate care to be provided to suspects including the requirement to transport suspects to a medical facility are usual and recurring situations with which officers of Grundy County Sheriff's Department encounter on a regular basis. As such, Defendant Grundy County was aware of a need for basic and advanced training in these areas.

83.　Defendant Grundy County was aware that deprivation of the constitutional rights of citizens was likely to result from its lack of training and the failure to modify its training. As such, Defendant Grundy County was deliberately indifferent and exhibited reckless disregard with respect to the potential violation of constitutional rights. Further, Defendant Grundy County's failure to train reflects a conscious choice and policy by a municipality to the detriment of Mr. Ledbetter.

84.　The failure to train and/or modify training constituted official policies, customs, usages, or practices of Defendant Grundy County.

85.　Defendant Grundy County's respective failures to train and/or modify training were behind the acts and omissions the Defendant officers made toward Mr. Ledbetter.

86.　As a direct and proximate result of Defendant Grundy County's acts and omissions, Mr. Ledbetter suffered injuries, experienced pain & suffering, and ultimately died.

18

87. As a direct and proximate result of the acts and omissions described herein, Mr. Ledbetter and, by extension, Plaintiffs suffered compensatory and special damages as defined under federal common law and in an amount to be determined by jury.

88. The actions and omissions of the individual Defendants complained of herein were unlawful, conscience-shocking, and unconstitutional. Moreover, they were performed maliciously, recklessly, intentionally, willfully, wantonly, and in such a manner as to entitle the Plaintiff to an award of punitive damages.

89. Plaintiffs are entitled to recovery of costs, including reasonable attorneys' fees under 42 U.S.C. § 1988.

## COUNT V - STATE LAW CLAIM FOR NEGLIGENCE

90. Plaintiffs re-allege and incorporate all paragraphs in this Complaint as if expressly stated herein.

91. In addition to the above federal law claims, Plaintiffs asserts claims pursuant to the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101 *et seq.*

92. Defendant Grundy County and the individual Defendants owed a duty of due care to Mr. Ledbetter to refrain from handling him in a negligent fashion that could, would, and ultimately did cause injury and death to him.

93. The use of excessive force, the failure to protect, and the failure to identify a medical crisis and render appropriate care were breaches of the above-mentioned duty of care owed to Mr. Ledbetter. Moreover, as a direct and proximate result of said breach, Mr. Ledbetter suffered and died and the Plaintiffs suffered the loss of consortium, society,

19

companionship, guidance, love and affection and services of Mr. Ledbetter and is entitled to a judgment against the Defendant for compensatory damages arising as the result of such loss of consortium.

94.     The actions and omissions of the individual Defendants complained of herein were unlawful, conscience-shocking, and unconstitutional. Moreover, they were performed maliciously, recklessly, intentionally, willfully, wantonly, and in such a manner as to entitle the Plaintiff to an award of punitive damages.

## PRAYER FOR RELIEF

1.     That process issue to the Defendants and that they be required to answer in the time required by law;

2.     That judgment be rendered in favor of the Plaintiffs and against the Defendant on all causes of action asserted herein;

3.     That Plaintiffs be awarded those damages to which they are entitled by proof submitted in this case for the pain and suffering endured by Ronnie Ledbetter prior to his death, funeral expenses incurred and the pecuniary value of the life of Ronnie Ledbetter as the result of the violation of his rights as guaranteed by the Fourteenth Amendment to the Constitution of the United States;

4.     That punitive damages be assessed against the individual Defendants;

5.     That the Plaintiffs be awarded reasonable expenses including reasonable attorney's fees and expert fees and discretionary costs pursuant to 42 U.S.C § 1988 (b) and (c);

20

6.     That the Plaintiffs be awarded all damages allowable for their stated cause of action for wrongful death pursuant to Tenn. Code Ann. § 20-5-113 up to the limits provided by Tenn. Code Ann. § 29-20-403;

7.     That Defendants be held jointly and severally liable for all damages;

8.     That the Plaintiffs receive any other further and general relief to which they may be entitled; and

9.     That a jury of eight (8) is demanded.

Respectfully Submitted,

/s/ David J. McKenzie
**DAVID J. McKENZIE   #025563**
**The Law Office of David McKenzie**
205 West Commerce Street
Lewisburg, TN 37091
931-359-7305/ 931-422-5154 (fax)
david@davidmckenzielaw.com

/s/ Debbie Z. Boudreaux
**DEBBIE Z. BOUDREAUX   #030416**
**The Law Office of David McKenzie**
205 West Commerce Street
Lewisburg, TN 37091
931-359-7305/ 931-422-5154 (fax)
debbie@davidmckenzielaw.com

/s/ Savannah B. Oliver
**SAVANNAH B. OLIVER   #039367**
**The Law Office of David McKenzie**
205 West Commerce Street
Lewisburg, TN 37091
931-359-7305/ 931-422-5154 (fax)
savannah@davidmckenzielaw.com

21